WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Bryant and Andrea Bryant, individually and as husband and wife, <br><br> Plaintiffs, <br><br> v. <br><br> The City of Goodyear; William R. Newman, Jr. and Jane Doe Newman, husband and wife, Mark Brown and Jane Doe Brown, husband and wife; Ralph McLaughlin and Jane Doe McLaughlin, husband and wife; and Jeff Rogers and Jane Doe Rogers, husband and wife, <br><br> Defendants. | No. CV-12-00319-PHX-JAT <br><br> **ORDER** |

Pending before the Court are: (1) Defendants' Motion to Dismiss Plaintiffs' Federal Claims (Doc. 30), (2) Defendants' Motion for Partial Summary Judgment on Plaintiffs' State Law Claims (Doc. 31), and (3) Defendants' Motion for Extension of Dispositive Motion Deadline (Doc. 78). The Court now rules on the Motions.

## I.    BACKGROUND

In their Amended Complaint (Doc. 6), Plaintiffs allege as follows:

In 2001, Plaintiff David Bryant ("Mr. Bryant") joined the Goodyear Police Department. (Doc. 6 at ¶ 19). In 2008, Mr. Bryant was promoted to sergeant. (*Id.* at ¶ 20). Mr. Bryant routinely received performance reviews describing him as an exemplary

employee and police officer and he was awarded numerous commendations.  (*Id.* at ¶¶ 20-22).  In 2009, Mr. Bryant applied for and received a position with the Street Crimes Unit of the Goodyear Police Department (the "SCU").  (*Id.* at ¶¶ 23 & 29).  Mr. Bryant later advanced to a Detective-Sergeant position in the SCU, giving him direct supervision over the four officers in the SCU.  (*Id.* at ¶ 29).  In addition to his position with the SCU, Mr. Bryant supervised three non-SCU officers, oversaw the Goodyear Police Department's off-duty work program, and covered Patrol Sergeant duties when asked to do so.  (*Id.* at ¶ 30).

In 2010, Mr. Bryant was preparing the SCU for an operation that required the SCU to raid a facility and serve search warrants the following morning at 5:30 a.m.  (*Id.* at ¶ 32).  Because of the danger involved in the next day's operation and the early timeframe, Mr. Bryant allowed the SCU to go home early in the afternoon to be with their families and rest for the upcoming operation.  (*Id.* at ¶ 33).  When a member of the unit voiced concern about how the hours would be accounted for if they left early, Mr. Bryant explained that the upcoming operation was sufficiently time-intensive to allow the members of the unit to attain their required 40 hours per week.  (*Id.* at ¶ 34).  After the SCU went home, Mr. Bryant informed his supervisors, Defendant McLaughlin and William Cusson about his decision to release the unit early and they both approved.  (*Id.* at ¶ 35).  The enforcement operation the following day took approximately fifteen hours making up for the early release the day before.  (*Id.* at ¶ 36).

Mr. Bryant's decision to release the SCU early the day before the enforcement operation triggered an internal affairs investigation.  (*Id.* at ¶ 37).  Defendant Rogers initially led the investigation and the purpose was to determine whether the amount of hours the SCU reported and received compensation for were accurate.  (*Id.* at ¶ 38).  Defendant Rogers identified what he mistakenly interpreted as discrepancies between the hours reported by the SCU and approved by Mr. Bryant and the Goodyear Police Department's records of how many hours the SCU actually worked.  (*Id.* at ¶ 39).  After his initial inquiry, Defendant Rogers suggested that the inquiry be taken over by an

outside agency or entity, but that suggestion was ignored and the investigation was instead taken over by Defendant Newman.  (*Id.* at ¶ 40).  Defendant Newman did not have the requisite expertise or skills to perform such an investigation.  (*Id.* at ¶ 41).  Defendant Newman changed the scope of the investigation to focus solely on Mr. Bryant and the discrepancies Defendant Newman believed suggested that Mr. Bryant had not worked the amount of hours for which he received compensation.  (*Id.* at ¶ 42).

Rather than treating the alleged discrepancies as a matter for human resources, the Goodyear Police Department permitted Defendant Newman to launch a criminal investigation into Mr. Bryant's hours and began compiling electronic documents for the prosecution of Mr. Bryant.  (*Id.*at ¶ 44).  Defendant Newman investigated electronic records of Mr. Bryant's "key fob," which contained information as to when Mr. Bryant's key fob was used to open electronic door locks.  (*Id.* at ¶ 47).  When Mr. Newman could not locate any key fob records for Mr. Bryant, he concluded that Mr. Bryant must not have been working.  (*Id.* at ¶ 48).  The key fob records were later located and destroyed by Goodyear Police Department.  (*Id.*at ¶ 49).  In addition to the use of his key fob, there were many other ways Mr. Bryant could access the police station.  (*Id.* at ¶ 50).

Defendant Newman also examined the Goodyear Police Department's Officer/Unit Status Inquiry and Unit Log Listing ("CAD files") to determine when Mr. Bryant was at work.  (*Id.* at ¶ 51).  The files are electronic records recorded by a radio dispatcher after an officer states the phrase "10-8" into the radio to indicate that he is going on duty and states the phrase "10-7" to indicate that he is going off duty.  (*Id.* at ¶¶ 52-54).  The CAD files are unreliable because dispatchers often miss the 10-8s and 10-7s and fail to properly record them.  (*Id.* at ¶ 53).  When Defendant Newman could not verify Mr. Bryant's hours from the CAD files, he determined that Mr. Bryant was not working at all times for which he received compensation.  (*Id.* at ¶ 55).  It was later discovered that Defendant Newman failed to properly add hours listed on the CAD files and incorrectly failed to credit Mr. Bryant with at least 80 hours of work time.  (*Id.* at ¶ 56).

1    In December 2010, Goodyear Police Department employees told Mr. Bryant that
2    "things weren't looking good for him" and that he should resign and "just keep quiet."
3    (*Id.* at ¶ 60).   Defendant Rogers made the same warning to Mr. Bryant's union
4    representative. (*Id.* at ¶ 61).

5    In January 2011, Defendant Newman called Mr. Bryant into an interrogation
6    room, read him his Miranda Rights, informed him there was irrefutable evidence against
7    him, and asked him if he wanted to share anything.  (*Id.* at ¶ 62).  Defendant Newman
8    refused to inform Mr. Bryant of the accusations against him and Mr. Bryant declined any
9    discussion. (*Id.* at ¶ 62).

10   At around this time, Mr. Bryant was asked to accept the position of head of
11   security at a warehouse firm.  (*Id.* at ¶ 63).  Feeling singled out and unwelcome at the
12   Goodyear Police Department, Mr. Bryant accepted the job and resigned.  (*Id.* at ¶ 64).
13   Despite Mr. Bryant's resignation, Defendant Newman continued his investigation.  (*Id.* at
14   ¶ 65).  Defendant Newman never obtained any evidence that Mr. Bryant lied about his
15   hours and Defendant Newman ignored and destroyed evidence that would have
16   established otherwise.  (*Id.* at ¶ 66).  Defendant Newman never examined Mr. Bryant's
17   work-issued computer, which contained evidence of when Mr. Bryant was working.  (*Id.*
18   at ¶¶ 67-68).  When Mr. Bryant resigned, the Goodyear Police Department wiped the
19   memory of Mr. Bryant's computer and sent it to surplus for destruction.  (*Id.* at ¶ 70).

20   Defendant Newman, despite knowing that any charges against Mr. Bryant lacked
21   probable cause, pushed for a seventeen count felony indictment to be filed against Mr.
22   Bryant.  (*Id.* at ¶ 72).  Defendant Newman misrepresented the extent of the reliability of
23   the key-fob and CAD files to the grand jury.  (*Id.* at ¶ 73).  After a grand jury indictment
24   was obtained, but before it was disclosed to the public, Defendant Rogers and Defendant
25   Newman told Defendant McLaughlin about the investigation and indictment.  (*Id.* at ¶
26   74).  Before the indictment was signed by a judge or served on Officer Bryant, Defendant
27   McLaughlin announced at a press conference that Mr. Bryant was a criminal and that his
28   actions would not be tolerated.  (*Id.* at ¶¶ 75, 77).  Defendant Brown, who was then Chief

1  of the Goodyear Police Department, did not sanction or prevent Defendant McLaughlin

2  from convening the press conference.  (*Id.* at ¶ 78).

3       Mr. Bryant had not yet begun his new job and, when his new employer saw the

4  press conference, the employer informed Mr. Bryant that he could not work there.  (*Id.* at

5  ¶ 81).  The County Attorney dismissed the criminal charges on January 18, 2012.  (*Id.* at

6  ¶ 85).

7       In their Amended Complaint, Plaintiffs assert fourteen counts of violations of

8  federal and state law against Defendants.

9       Defendants now move to dismiss the federal claims and move for summary

10  judgment on the state claims.

11       **II.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

12       Defendants move for partial summary judgment on Plaintiffs' state law claims.

13  Defendants claim they are entitled to summary judgment on the state law claims because

14  (1) Plaintiffs failed to comply with Arizona's notice of claim requirements as set forth in

15  Arizona Revised Statutes section 12-821.01, (2) Plaintiffs did not properly serve

16  Defendants Newman, Brown, and McLaughlin with their notice of claim, and (3)

17  Plaintiffs failed to file a timely notice of claim.

18       To the extent Defendants' Motion for Summary Judgment is premised on failure

19  to comply with Arizona's notice of claim requirements, it is not properly considered

20  under the summary judgment standard of Federal Rule of Civil Procedure 56 because

21  "the failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as

22  a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than

23  a motion for summary judgment."  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.

24  2003) (internal citations omitted); *see*, *e.g.*, *Louis Baker v. City of Tempe*, No. CV 07-

25  1553-PHX-MHM, 2008 WL 2277882, at 1 (D. Ariz. May 30, 2008) (finding that a

26  motion for failure to comply with Arizona's notice of claim statute is properly treated as

27  an unenumerated 12(b) motion) (citing *Wyatt*, 315 F.3d at 1119).  It is appropriate to treat

28  a motion for failure to comply with Arizona's notice of claim statute as an unenumerated

12(b) rather than a motion for summary judgment because "summary judgment is on the merits, . . . whereas dismissal of an action on the ground of failure to exhaust administrative remedies is not on the merits."  *Id.* (internal quotations and citations omitted).  "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact."  *Id.* at 1119-20 (internal citation omitted).[1]

Nonetheless, to the extent Defendants argue that Plaintiffs claimed are barred because they are untimely, the Court can properly consider such a challenge under the motion for summary judgment standard.   Accordingly, the Court will consider Defendants' "motion for summary judgment" to be an unenumerated 12(b) motion to dismiss except to the extent Defendants' argument is that Plaintiffs' claims are time-barred, which the Court will consider under the summary judgment standard.

In their Complaint, Plaintiffs assert state law claims of: (1) malicious prosecution, (2) defamation, (3) abuse of process, (4) false light/invasion of privacy; (5) intentional infliction of emotional distress, (6) negligent infliction of emotional distress, (7) negligence per se, and (8) negligence.

Pursuant to Arizona Revised Statutes section 12-821.01(A):

> Persons who have claims against a public entity or a public employee shall file claims with the person or persons authorized to accept service for the public entity or public employee as set forth in the Arizona rules of civil procedure

---

[1]   To the Court's knowledge, Arizona state courts have not recognized an "unenumerated 12(b)" motion for failure to exhaust.   Accordingly, Arizona courts frequently find that motions for failure to satisfy Arizona's notice of claim statute are properly brought as motions for summary judgment.  *See*, *e.g.*, *Canyon del Rio Investors, L.L.C. v. City of Flagstaff*, 258 P.3d 154, 158 (Ariz. Ct App. 2011) (finding that the Court's consideration of attachments to a 12(b)(6) motion to dismiss for failure to comply with Arizona's notice of claim statute converted the motion to dismiss into one for summary judgment).   As discussed more fully below, under the facts of this case, whether the Court treats the motion to dismiss for failure to comply with the notice of claim statute as one for summary judgment or an unenumerated 12(b) is simply a distinction of form.

> within one hundred eighty days after the cause of action accrues. The claim shall contain facts sufficient to permit the public entity or public employee to understand the basis on which liability is claimed. The claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount. Any claim that is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon.

Ariz. Rev. Stat. § 12-821.01(A).

Defendants argue that: (1) all state law claims asserted against Defendants Newman, Brown, and McLaughlin are barred because Plaintiffs either did not serve them with copies of the notice of claim or did not serve them with copies of the notice of claim before filing this lawsuit, and (2) the state law claims of defamation, abuse of process, false light invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence per se, and negligence as asserted against Defendants City of Goodyear, Newman, Brown, McLaughlin, and Rogers are time-barred because they were either never served or were served more than 180 days after those causes of action accrued.

### A.     WHETHER DEFENDANTS NEWMAN, BROWN, AND MCLAUGHLIN WERE PROPERLY SERVED WITH COPIES OF THE NOTICE OF CLAIM

Defendants first argue that all state law claims alleged against Defendants Newman, Brown, and McLaughlin should be dismissed because Plaintiffs never served them with a notice of claim.  Defendants have provided the affidavits of Defendants Newman, Brown, and McLaughlin, wherein each aver that they were not served with a copy of Plaintiffs' notice of claim.  (Doc. 32-1 at 2, 26, 28).

In Response, Plaintiffs do not dispute that Defendant Brown was never served with a notice of claim.  (Doc. 41 at ¶ 16).  Accordingly, the state law claims as asserted against Defendant Brown for malicious prosecution, defamation, abuse of process, false light/invasion of privacy; intentional infliction of emotional distress, negligent infliction of emotional distress, negligence per se, and negligence are dismissed.

- 7 -

Plaintiffs dispute Defendant Newman's and Defendant McLaughlin's assertions that they were not served with a notice of claim. In Response to Defendants' motion for summary judgment, Plaintiffs provided affidavits from a process server averring that service was completed on Defendants McLaughlin and Newman on March 6, 2012. (Doc. 41-1 at 2, 4). In Reply, Defendants argue that, because Plaintiffs' original complaint was filed before Plaintiffs served the notice of claim on Defendants Newman and McLaughlin, the notice of claim is procedurally deficient and such deficiency is a bar to the state law claims.

Plaintiffs filed their original complaint on February 15, 2012. Plaintiffs served their notice of claim on Defendants Newman and McLaughlin on March 6, 2012. Plaintiffs argue that "[t]he original complaint in this matter was filed on February 15, 2012 as a placeholder to avoid potential statute of limitations issues while the Bryants finalized their Notice of Claim." (Doc. 40 at 3). In Reply, Defendants argue that section 12-821.01 requires that the claim be submitted and rejected before a lawsuit is filed.

Indeed, "[b]efore initiating an action for damages against a public entity, a claimant must provide a notice of claim to the entity in compliance with Arizona Revised Statutes (A.R.S.) section 12–821.01 (2003)." *Deer Valley Unified School Dist. No. 97 v. Houser*, 152 P.3d 490, 491 (Ariz. 2007). "The statutory requirements serve several important functions: They 'allow the public entity to investigate and assess liability, . . . permit the possibility of settlement prior to litigation, and . . . assist the public entity in financial planning and budgeting.'" *Id.* at 492 (internal citations omitted) (alterations in original).

> Compliance with the notice provision of § 12–821.01(A) is a mandatory and essential prerequisite to such an action. Failure to comply with the statute is not cured by actual notice or substantial compliance. Rather, plaintiff's failure bars *any* claim against the entity or employee.

*Harris v. Cochise Health Systems*, 160 P.3d 223, 230 (Ariz. Ct. App. 2007) (internal quotations and citations omitted) (emphasis in original).

- 8 -

Accordingly, because Plaintiffs filed suit before serving their notice of claim, Plaintiffs did not comply with Arizona Revised Statutes section 12-821.01 and, thus, their state law claims are barred. *See Andress v. City of Chandler*, 115, 7 P.3d 121, 124 (Ariz. Ct. App. 2000) (finding that allowing plaintiff to file their lawsuit before serving public entities or their employee defendants with a notice of claim "would clearly defeat the pre-litigation notification and settlement purposes of the notice of claim statute"); *Arizona Dep't. of Revenue v. Dougherty*, 29 P.3d 862, 867 (Ariz. 2001) (stating that "the general claim statute requires exhaustion before action by making clear that no action may be maintained against a public entity without first filing a notice of claim.") (internal citation omitted).[2]  Accordingly, the state law claims as asserted against Defendants McLaughlin and Newman for malicious prosecution, defamation, abuse of process, false light/invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence per se, and negligence are dismissed.[3]

---

[2]  The following unpublished opinions from the Arizona Court of Appeals have all reached the same conclusion:  *Goldwater v. Parzych*, No. CA-CV 07-0060, 2007 WL 5471738, at *2 (Ariz. Ct. App. Oct. 23, 2007) (holding that where notice of claim was served after Plaintiff filed his complaint, Plaintiff's notice of claim was untimely as a matter of law and barred by section 12-821.01 because "Arizona courts have interpreted the claims statute, in accordance with the purpose of the statute, to require that a notice of claim must be filed and rejected by the public entity or public employee *before* a lawsuit can be filed.") (internal citation omitted) (emphasis in original); *Desert Heritage Ltd. Partnership v. City of Tucson*, No. CA-CV 2009-0176, 2010 WL 1931682, at *5 (Ariz. Ct. App. May 13, 2010) (reasoning that  reading of section 12-821.01 that would require parties to file claim notices after litigation had begun would "render[] meaningless the purpose of § 12-821.01"); *Smith v. Johnston*, Nos. 2 CA-CV 2007-0145, 2 CA CV 2007-0061, 2008 WL 4292735, at *3 (Ariz. Ct. App. Sept. 19, 2008) (finding that "permitting a plaintiff to use his complaint as a notice of claim would wholly defeat the [purposes of the] statute") (internal citation omitted).

Although the Court is not permitted to rely on these opinions under the Arizona Rules of Civil Procedure, the Court adopts the underlying reasoning in those opinions as an accurate statement of Arizona law.

[3]  It appears that the notice of claim served on Defendant City of Goodyear and Defendant Rogers was also untimely because it was served after the Complaint was

## B.    WHETHER PLAINTIFFS' STATE LAW CLAIMS ARE TIME-BARRED

Defendants next argue that all Defendants are entitled to summary judgment on Plaintiffs' state law claims of defamation, abuse of process, false light invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence per se, and negligence because these causes of action accrued 180 days before Plaintiffs served any of the Defendants with a notice of claim and are, thus, time-barred.  In Response, Plaintiffs argue that none of these claims accrued until the indictment against Mr. Bryant was dismissed.[4]

As noted above, Defendant Brown has not been served with a notice of claim and Defendants Newman and McLaughlin were served with the notice of claim on March 6, 2012.  Defendant City of Goodyear was likewise served with the notice of claim on March 6, 2012.  Although Defendants indicate that Defendant Rogers was also served with the notice of claim on March 6, 2012, there is nothing attached to any of the motions to indicate that Defendant Rogers was also served with the notice of claim on March 6, 2012.  Nonetheless, Plaintiffs do not dispute that Defendant Rogers was served on March 6, 2012.  Accordingly, for the purposes of this motion, the Court will assume Defendant Rogers was also served with the notice of claim on March 6, 2012.

The Court will now determine whether the service of the notice of claim was timely pursuant to Arizona Revised Statutes section 12-821.01(A).

### 1.    DEFAMATION

Plaintiffs allege that Defendant McLaughlin held a press conference before Mr. Bryant was served with the indictment.  Plaintiffs allege that, at the press conference, Defendants made knowingly false statements about Mr. Bryant's honesty and integrity

---

already filed.  However, Plaintiffs did not move to dismiss the state law claims against Defendants City of Goodyear and Defendant Rogers on that ground and the Court will not do so sua sponte without giving Plaintiffs an opportunity to respond.

[4]  Defendants concede that Plaintiffs' claim for malicious prosecution did not accrue until the criminal charges against Mr. Bryant were dismissed.  (Doc. 42 at 3).

1   and that those statements harmed Mr. Bryant's reputation in the community.  (Doc. 6 at

2   ¶¶ 118-122).  Based on these statements, Plaintiffs have asserted a claim for defamation

3   against Defendants.

4         Defendants argue that, based on the timing of the issuance and service of the

5   indictment and Plaintiffs' allegation that Defendants knowingly made false statements

6   that included information about the criminal indictment at a press conference that

7   occurred before the indictment was served, Plaintiffs' claim for defamation must have

8   accrued on February 16, 2011, when the press conference allegedly occurred.

9         It is undisputed that the indictment against Mr. Bryant was issued on February 16,

10   2011.  (Doc. 32 at ¶¶ 3-4; Doc. 41 at ¶¶ 3-4).  It is further undisputed that Mr. Bryant was

11   served with the indictment on February 17, 2011.  (Doc. 32 at ¶ 5; Doc. 41 at ¶ 5).  It is

12   likewise undisputed that the criminal prosecution was dismissed on January 18, 2012.

13   (Doc. 32 at ¶ 9; Doc. 41 at ¶ 9).  Plaintiffs do not dispute that the press conference at

14   which the allegedly defamatory statements were made occurred on February 16, 2011.

15   Rather, Plaintiffs argue that, because truth is a defense to defamation, Plaintiffs' claims

16   could not be successful until the criminal case was dismissed and, thus, the defamation

17   claim could not have accrued until the criminal charges were dropped on January 18,

18   2012.

19         Pursuant to Arizona Revised Statutes section 12-821.01(B) "a cause of action

20   accrues when the damaged party realizes he or she has been damaged and knows or

21   reasonably should know the cause, source, act, event, instrumentality or condition which

22   caused or contributed to the damage."  A.R.S. § 12-821.01(B).  "Generally, a cause of

23   action for defamation accrues on the date of the defamatory publication."  *Dube v. Likins*,

24   167 P.3d 93, 109 (Ariz. Ct. App. 2007) (citing *Lim v. Superior Court,* 616 P.2d 941, 942

25   (Ariz. Ct. App. 1980)).  In cases "in which the defamatory statement is 'published in a

26   manner in which it is peculiarly likely to be concealed from the plaintiff, such as a

27   confidential memorandum or credit report,'" the Court looks to the date the defamatory

28   statements were discovered or reasonably should have been discovered in determining

the date of accrual.  *Id.* (quoting *Clark v. AiResearch Mfg. Co. of Ariz.,* 673 P.2d 984, 985 (Ariz. Ct. App. 1983)).  However, in cases where there is "nothing 'particularly secretive' about the allegedly defamatory communications and [plaintiffs] had long had reason to believe that [Defendants and their] personnel had been saying negative things about [them]," the cause of action begins to accrue on the day of the allegedly defamatory publication.  *Id.*  (quoting *Clark,* 673 P.2d at 986-87).

In the instant case, the defamatory statements made by Defendant McLaughlin occurred on February 16, 2011.  Plaintiffs allege that they saw the press conference on that day and that is how they learned an indictment had been filed against Mr. Bryant.  As such, there was nothing secretive about the statements made at the press conference, which are the basis for Plaintiffs' claim for defamation.  Accordingly, the defamation claim accrued on February 16, 2011, which is more than 180 days prior to Plaintiffs' service of the notice of claim on all Defendants on March 6, 2012.

Plaintiffs cite to no cases in support of their argument that the defamation claim did not accrue until the criminal charges were dropped because there was no guarantee that those claims would be meritorious until that time.  Plaintiffs learned of the defamation on February 16, 2011.  The plain language of section 12-821.01 states that a cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or contributed to the damage.  Nothing in section 12-821.01 suggests that the accrual period is tolled until the claim is more likely to be meritorious and there is nothing in the language of 12-821.01 that would lead the Court to conclude that a party "realizes" such a claim only when it becomes potentially meritorious.

Accordingly, Plaintiffs' defamation claim accrued on February 16, 2011.  As such, Plaintiffs' notice of claim regarding defamation is untimely and barred pursuant to 12-821.01.  Therefore, Defendants' Motion for Summary Judgment on Plaintiffs' state law defamation claim is granted as to all Defendants.

## 2.   FALSE LIGHT INVASION OF PRIVACY

Defendants next argue that Plaintiffs' false light invasion of privacy claim is likewise premised on Defendants allegedly publishing false information about Plaintiffs at the February 16, 2011 press conference, and, thus, such claim also accrued on February 16, 2011.  Like defamation, a claim for false light invasion of privacy accrues on the date of publication.  *See State v. Superior Court*, 921 P.2d 697, 702-703 (Ariz. Ct. App. 1996). Plaintiffs again argue that the accrual time should be tolled to the day the criminal indictment was dismissed because "had Mr. Bryant been convicted on any of his counts, he would have been severely prejudiced in proving he had been shown in a false light as a criminal."  (Doc. 40 at 6).  As with their defamation claim, Plaintiffs have not pointed to anything in section 12-821.01 suggesting that the accrual time should be tolled until a claim is more likely to be meritorious.   As such, Defendants' Motion for Summary Judgment on Plaintiffs' claim for false light invasion of privacy is granted as to all Defendants because such claim is time-barred pursuant to section 12-821.01.

## 3.   NEGLIGENCE PER SE

Plaintiffs allege that Defendants violated Arizona Revised Statutes section 13-2812 by disclosing the nature and substance of the grand jury proceedings to one another and violated Arizona Revised Statutes section 13-2813 by prematurely disclosing the results of the grand jury to the public.  Plaintiffs allege that Defendants violation of these criminal statutes is negligence per se.

Defendants argue that, because Plaintiffs' negligence per se claim is based on events that occurred prior to or at the press conference, it necessarily accrued by February 16, 2011 and, thus, Plaintiffs' notice of claim regarding negligence per se was untimely and is barred.  In Response, Plaintiffs argue that "summary judgment is improper because the damages caused by Defendants' violation of statute[sic] continued until well after the criminal case was dismissed, and thus, like the continuing tort doctrine, the cause of action did not accrue until the harm stopped."  (Doc. 40 at 7).  Plaintiffs argue that this claim did not accrue until the dismissal of the criminal action.

In Reply, Defendants argue that Plaintiffs' negligence per se claim is not a continuing tort because the continuing tort rule does not apply because the acts on which these claims are premised were completed on the day of the press conference. This Court has previously addressed a similar argument relating to a claim that negligence is a continuing tort under Arizona law and stated:

> Under certain conditions, a tort can be continuous and the statute of limitations does not begin to run until the date of the last tortious act. *Floyd v. Donahue*, 923 P.2d 875, 879 (Ariz. Ct. App. 1996) (citing *Garcia v. Sumrall*, 121 P.2d 640, 643 (Ariz. 1942) (holding that where a trespass is continuing in nature, an action may be brought any time within two years of the last trespass, but damages are recoverable only for trespass occurring within the limitations period)). However, there is no authority under Arizona law for the proposition that the torts of negligence and abuse of process are continuing torts.

*Dowling v. Arpaio*, No. 09-1401-PHX-JAT, 2011 WL 843942, at *4 (D. Ariz. March 8, 2011). Further, "[t]he [continuing tort] doctrine applies where there is 'no single incident' that can 'fairly or realistically be identified as the cause of significant harm.'" *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) (internal citation omitted); *see Floyd*, 923 P.2d at 879-80 (stating that "the continuing tort rule does not apply here because each claimed act is a separate assault causing separate as well as cumulative injury.").

In this case, Plaintiffs appear to argue that any claims related to the indictment and criminal charges against Defendant Bryant are so linked that the latest date of accrual for any of them would apply to all of them "like the continuing tort doctrine." This is simply not the law. As alleged, Plaintiffs' claim for negligence per se arises out of actions that occurred on or before February 16, 2011. Accordingly, Plaintiffs' claim for negligence per se accrued by February 16, 2011 and is barred by the notice of claim statute. As such, Defendants' Motion for Summary Judgment on Plaintiffs' claim for negligence per se is granted as to all Defendants.

### 4.    ABUSE OF PROCESS

Defendants next argue that Plaintiffs' abuse of process claim must have accrued by February 16, 2011 because the institution of criminal proceedings through the indictment is the only judicial process mentioned in the complaint.  In response, Plaintiffs argue that their abuse of process claim did not accrue for statute of limitations purposes until after the charges against Mr. Bryant were dismissed "because only then was the malicious prosecution the cause of [Plaintiffs'] damages."  (Doc. 40 at 8).

The Court disagrees with both Plaintiffs and Defendants.  Under A.R.S. § 12–821.01(B), while it is not necessary for the plaintiff to have knowledge of all the details in order for a cause of action to accrue, the cause of action does not accrue until the plaintiff knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or contributed to the damage.  In the complaint, Plaintiffs allege that they were unaware of any details of the criminal investigation until they saw the press conference announcing the indictment.  While the press conference may have made Plaintiffs realize that they had been damaged, there are no allegations in the complaint with any details as to when Plaintiffs discovered the facts surrounding the events culminating in the criminal indictment.  Aside from their conjecture that Plaintiffs must have been aware of these details on February 16, 2011, Defendants have offered no evidence supporting such facts.  As such, Defendants have not met their burden of showing that there is no genuine dispute as to any material fact relating to when Plaintiffs discovered they had been damaged and the source of that damage.  *See* Fed. R. Civ. P. 56(a).  Accordingly, Defendants' Motion for Summary Judgment on Plaintiffs' abuse of process claim is denied.

### 5.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND NEGLIGENCE

Defendants argue that Plaintiffs' claims for intentional infliction of emotional distress and negligence also arise out of the investigation that culminated in the indictment and, thus, must have accrued by February 16, 2011.  As with their argument

that abuse of process claim should be dismissed, Defendants have not met their burden of showing that there is no genuine dispute as to any material fact relating to when Plaintiffs discovered they had been damaged and the source of that damage as relating to their claims for intentional infliction of emotional distress and negligence.  *See* Fed. R. Civ. P. 56(a).  Accordingly, Defendants' Motion for Summary Judgment on Plaintiffs' claims for intentional infliction of emotional distress and negligence is denied.

## 6. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Defendants next argue that Plaintiffs' claim for negligence infliction of emotional distress is untimely because it accrued 180 days before the notice of claim was served and that Plaintiffs have failed to state a claim upon which relief can be granted as to that claim.

"A negligent infliction of emotional distress cause of action requires the plaintiff to: (1) witness an injury to a closely related person, (2) suffer mental anguish manifested as physical injury, and (3) be within the zone of danger so as to be subject to an unreasonable risk of bodily harm created by the defendant."  *Pierce v. Casas Adobes Baptist Church*, 782 P.2d 1162, 1165 (Ariz. 1989) (internal citations omitted). Defendants argue that Plaintiffs have failed to allege any facts that would give rise to a claim for negligent infliction of emotional distress because an investigation into alleged fraud and a subsequent criminal prosecution cannot be considered sufficient to create an unreasonable risk of bodily harm.

In Response, Plaintiffs argue that the "negligent treatment of Bryant created an unreasonable risk that the Bryants would suffer physical effects and bodily harm attributable to their extreme mental anguish."  (Doc. 40 at 9).  Plaintiffs appear to misunderstand the necessary elements to state a claim for negligent infliction of emotional distress.

There are no allegations in the complaint that either of the Bryants witnessed an injury to a closely related person or were within the zone of danger so as to be subject to

1  an unreasonable risk of bodily harm created by the defendants.  Accordingly, the Bryants
2  have failed to state a claim upon which relief can be granted for negligent infliction of
3  emotional distress and Defendants' Motion for Summary Judgment on that claim is
4  granted.

5  ### III.   DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FEDERAL CLAIMS

6  Plaintiffs' Complaint contains five Counts asserting that Defendants committed
7  violations of federal law.  These counts are entitled:  (1) Civil Rights Violation of 42
8  U.S.C. §1983 – Denial of Due Process; (2) Civil Rights Violation 42 U.S.C. § 1983 –
9  Spoliation of Evidence; (3) Civil Rights Violation 42 U.S.C. § 1983 – Negligent
10  Investigation; (4) Civil Rights Violation 42 U.S.C. § 1983 – Lack of Probable Cause; and
11  (5) Malicious Prosecution.

12  Defendants move to dismiss each of these counts pursuant to Federal Rule of Civil
13  Procedure 12(b)(6).  Defendants assert that dismissal is appropriate because the federal
14  claims in Plaintiffs' complaint are based on conclusory allegations, fail to state claims
15  upon which relief can be granted, fail to identify which Defendants are being sued for
16  what wrong, and fail to provide allegations sufficient to conclude that each Defendant is
17  liable for each of the wrongs of which Plaintiffs complain.

18  ### A.   Legal Standard

19  The Court may dismiss a complaint for failure to state a claim under 12(b)(6) for
20  two reasons: 1) lack of a cognizable legal theory and 2) insufficient facts alleged under a
21  cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.
22  1990).  To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must
23  meet the requirements of Rule 8.  Rule 8(a)(2) requires a "short and plain statement of the
24  claim showing that the pleader is entitled to relief," so that the defendant has "fair notice
25  of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly,*
26  550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41 (1957)).

27  A complaint must contain sufficient factual matter, which, if accepted as true,
28  states a claim to relief that is "plausible on its face."  *Id.*  Facial plausibility exists if the

pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id.*

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in a complaint in the light most favorable to the drafter of the complaint, and the Court must accept all well-pleaded factual allegations as true. *Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir. 2000).

**B.    Analysis**

For the reasons set forth below, the Court finds that Plaintiffs have failed to state a claim upon which relief can be granted for any federal claim alleged in their Complaint. However, it appears that Plaintiffs may be able to plead cognizable legal theories and the basis for those theories and, thus, the Court will allow Plaintiffs to amend their Complaint.  Plaintiffs are warned that, in any amendment, they must follow the Court's guidance as set forth below.

**1.    Civil Rights Violation of 42 U.S.C. §1983 – Denial of Due Process (Count I)**

Although Plaintiffs characterize Count I of their Complaint to be a section 1983 claim for denial of due process, it is not clear from the allegations in that count how they believe their due process rights were violated.  Further, Plaintiffs include a list of alleged constitutional violations in Count I and it is unclear how those alleged constitutional violations relate to Plaintiffs' claim for denial of due process or what facts give rise to those violations.

Plaintiffs allege that "Defendants' wrongful conduct as referenced in this Complaint constitutes violations of the United States Constitution, including, but not limited to, Amendments IV, V, XIV, in that Mr. Bryant was deprived of privileges and immunities guaranteed to all citizens of the United States, was subjected to invasion  of privacy, malicious and selective prosecution, was criminally and civilly charged without

proper cause, with an unconstitutional motive and malice, without protection, and without substantive and procedural due process." (Doc. 6 at ¶ 89). Nowhere in this Count do Plaintiffs list the individual Defendants, any actions taken by the individual Defendants, or any facts supporting the "legal theory" in this Count. Further, it is not clear what legal theory Plaintiffs are attempting to assert.

"To state a federal claim, it is not enough to invoke a constitutional provision or to come up with a catalogue of federal statutes allegedly implicated. Rather, as the Supreme Court has repeatedly admonished, it is necessary to state a claim that is substantial." *Noatak v. Hoffman*, 896 F.2d 1157, 1166 (9th Cir. 1990) (Kozinski, J. dissenting) (majority opinion rev'd 501 U.S. 775 (1991)). Here, Plaintiffs have simply listed constitutional rights and have made no attempt to link them to the facts alleged in their Complaint or any conduct engaged in by any Defendant. As such, Plaintiffs have failed to put Defendants on notice of the legal theory being asserted against them, which actions by Defendants would support such a legal theory, or any other basis giving rise to such legal theory. Accordingly, Plaintiffs have failed to state claim upon which relief can be granted in Count I of their Complaint and Defendants' Motion to Dismiss will be granted as to Count I.

In any amendment, Plaintiffs must identify each legal theory in separate Counts of their Complaint, Plaintiffs must not simply list constitutional violations with no explanation. Plaintiffs must connect each legal theory to the actions giving rise to that legal theory and Plaintiffs must give the individual Defendants (including the City of Goodyear) notice of their conduct giving rise to such a claim. For example, Plaintiffs must not simply allege that Plaintiffs due process rights were violated by Defendants. Plaintiffs must identify their due process claim (substantive or procedural) and facts meeting the elements of such a clam.

### 2. Civil Rights Violation 42 U.S.C. § 1983 – Spoliation of Evidence (Count II)

Count II contains the same defects as discussed with regard to Count I and

1   contains that same list of alleged constitutional deprivations.  The only specific allegation

2   in Count II states that "Defendants violated the above provisions of the Constitution by

3   destroying exculpatory evidence that would have exonerated Mr. Bryant."  (Doc. 6 at ¶

4   97).  Defendants argue that Plaintiffs have failed to identify any constitutional right that

5   was violated by the alleged spoliation of evidence, which is necessary to state a claim

6   under 42 U.S.C. section 1983.  Defendants further argue that they have been unable to

7   locate any case in the Ninth Circuit recognizing a cause of action for spoliation of

8   evidence.

9       In Response, Plaintiffs make no attempt to identify any federal right giving rise to

10   a 1983 claim for spoliation of evidence.  Plaintiffs argue that "the cause of action is not

11   for spoliation of evidence, but for violating Bryant's civil rights by destroying evidence"

12   and "[t]he willful destruction of exculpatory evidence by the charging agency certainly

13   states a civil rights claim."  (Doc. 35 at 10, 11).  These statements fail to clarify

14   Plaintiffs' legal theory in any meaningful way.

15       Section 1983 is not a source of substantive rights on its own.  *Graham v. Connor,*

16   490 U.S. 386, 393–394 (1989).  Section 1983 "merely provides 'a method for vindicating

17   federal rights elsewhere conferred.'"  *Id.* at 394 (quoting *Baker v. McCollan,* 443 U.S.

18   137, 144 n. 3 (1979)).  "To make out a cause of action under section 1983, plaintiffs must

19   plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of

20   rights secured by the Constitution or federal statutes."  *Gibson v. United States,* 781 F.2d

21   1334, 1338 (9th Cir. 1986) (citing *Smith v. Cremins,* 308 F.2d 187, 190 (9th Cir. 1962)).

22   "The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a

23   right 'secured by the Constitution and laws.'"  *Baker,* 443 U.S. at 140.

24       In this case, Plaintiffs have not identified such right.  Further, Plaintiffs have not

25   articulated a federal or state cause of action the elements of which are "destroying

26   evidence."  If such a cause of action exists, Plaintiffs shall plead it by name and the facts

27   supporting it, in their amended complaint.  However, Plaintiffs cannot call simply call

28   any and all facts a "violation of his civil rights" and meet Rule 8's pleading standard.

1    Based on the foregoing, Defendants' Motion to Dismiss is granted as to Count II

2    of Plaintiffs' Complaint.

3    ### 3.   Civil Rights Violation 42 U.S.C. § 1983 – Negligent Investigation (Count III)

4    Defendants argue that Count III should be dismissed because Plaintiffs failed to

5    identify any constitutional right that was violated that would give rise to a section 1983

6    claim for negligent investigation.  In response, Plaintiffs argue that they have "identified

7    multiple constitutional rights, including, without limitation, those under the Fourth and

8    Fourteenth Amendments [] Bryant is not waiving his negligent investigation claims on

9    other Constitutional bases."  (Doc. 35 at 11 and n.2).  This argument simply demonstrates

10   that Plaintiffs have at no time before or during this lawsuit made any effort to identify the

11   legal theories that they are asserting against Defendants.  Because Plaintiffs do not know

12   their own theories, there is no possibility that Defendants are on notice of Plaintiffs' legal

13   theories or the grounds upon which those theories rest as required by Federal Rule of

14   Civil Procedure 8 and the Supreme Court's opinions in *Iqbal* and *Twombly*.

15   Moreover, Plaintiffs also appear to argue that they have stated a 1983 claim for

16   negligent investigation because Defendants had no probable cause to arrest Mr. Bryant.

17   Plaintiffs have made no attempt to connect any wrongful arrest of Mr. Bryant to a section

18   1983 claim for negligent investigation.

19   Based on the foregoing, Defendants' Motion to Dismiss is granted as to Count III.

20

21   ### 4.   Civil Rights Violation 42 U.S.C. § 1983 – Lack of Probable Cause (Count IV)

22   In Count IV, Plaintiffs again allege the same laundry list of constitutional

23   violations asserted in previous counts.  In one paragraph of this Count, Plaintiffs assert

24   that "Defendants violated Mr. Bryant's Fourth Amendment rights by arresting him and

25   charging him as a felon without probable cause."  (Doc. 6 at ¶ 110).  While Plaintiffs'

26   legal theory as to this Count (if limited to a Fourth Amendment violation) is clearer,

27   Plaintiffs have alleged no other facts regarding Mr. Bryant's arrest in the Complaint, and

28   again fail to identify the actions of the individual Defendants (including the City of

Goodyear) that give rise to this claim.  Accordingly, Defendants' Motion to Dismiss is granted as to Count IV.

### 5.    Malicious Prosecution (Count V)[5]

Although Plaintiffs identify the elements of a claim for malicious prosecution and generally assert that Defendants engaged in actions meeting those elements, Plaintiffs again fail to link specific facts to this claim and fail to identify the actions of the individual Defendants (including the City of Goodyear) that give rise to this claim.

Accordingly, Defendants' Motion to Dismiss Count V of the Complaint is granted.

### 6.    Leave to Amend

As discussed above, the Court will give Plaintiffs the opportunity to amend. "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 -841 (9th Cir. 2000).  Accordingly, in addition to the requirements the Court has outlined above, in the amended complaint, Plaintiffs must identify which Defendant is responsible for which wrongs to adequately put the individual Defendants on notice of the claims against them.  *See McHenry v. Renne*, 84 F.3d 1172, 1176, 1178 (9th Cir. 1996) (where complaint links plaintiffs' fact allegations to specific defendants, it [must also] inform defendants of the *legal* claims being asserted.") (emphasis in original).  Moreover, Plaintiffs must clearly identify each separate cause of action and shall not include lists of violations of constitutional rights. The Complaint must set forth "who is being sued, for what relief, and on what theory, with enough detail to guide discovery."  *Id.* at 1177.  Finally, any amended complaint will serve as the operative pleading in this case, so Plaintiffs must also reassert any state

---

[5]   It is not clear whether Plaintiffs' claim for malicious prosecution was asserted under state or federal law.  Accordingly, for the purposes of this motion, the Court assumes that Plaintiffs intended to assert a claim for malicious prosecution under both federal and state law.  If Plaintiffs amend their Complaint, they shall specify whether any malicious prosecution claim is being made pursuant to federal and/or state law.

law violations on which they intend to proceed.  However, Plaintiffs shall not reassert any state law causes of action that the Court has dismissed with prejudice or granted judgment on in this Order.

### IV.    CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment on Plaintiffs' State Law Claims (Doc. 31) is granted in part and denied in part as follows:

**IT IS ORDERED** that the state law claims as asserted against Defendant Brown for malicious prosecution (Count V), defamation (Count VI), abuse of process (Count VII), false light/invasion of privacy (Count VIII); intentional infliction of emotional distress (Count IX), negligent infliction of emotional distress (Count X), negligence per se (Count XI), and negligence (Count XII) are dismissed with prejudice.

**IT IS ORDERED** that the state law claims as asserted against Defendants McLaughlin and Newman for malicious prosecution (Count V), defamation (Count VI), abuse of process (Count VII), false light/invasion of privacy (Count VIII); intentional infliction of emotional distress (Count IX), negligent infliction of emotional distress (Count X), negligence per se (Count XI), and negligence (Count XII) are dismissed with prejudice.

**IT IS ORDERED** that partial summary judgment is granted in favor of Defendants City of Goodyear and Defendant Rogers on Plaintiffs' claims for defamation (Count VI), false light/invasion of privacy (Count VIII), negligence per se (Count XI) and negligent infliction of emotional distress (Count X).

**IT IS ORDERED** that partial summary judgment is denied as to Plaintiffs' claims against Defendant City of Goodyear and Defendant Rogers for abuse of process (Count VII), intentional infliction of emotional distress (Count X), and negligence (Count XII).

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Federal Claims (Doc. 30) is granted.  Counts I-V of the Complaint are dismissed as asserted against all Defendants without prejudice.  **IT IS FURTHER ORDERED** that

1   Plaintiffs shall file an Amended Complaint within 21 days of the date of this Order.

2       **IT IS FURTHER ORDERED** amending the Court's Scheduling Order (Doc. 23)

3   as follows:

4       **IT IS ORDERED** that all discovery, including depositions of parties, witnesses,

5   and experts, answers to interrogatories, and supplements to interrogatories must be

6   completed by August 1, 2013.

7       **IT IS FURTHER ORDERED** that all dispositive motions shall be filed no later

8   than August 30, 2013. Such motions must be, in all respects, in full compliance with the

9   Civil Local Rules.

10       **IT IS FINALLY ORDERED** that Defendants' Motion for Extension of

11   Dispositive Motion Deadline (Doc. 78) is denied as moot.

12       Dated this 6th day of May, 2013.

James A. Teilborg
Senior United States District Judge