WO

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Bryant and Andrea Bryant, individually and as husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>The City of Goodyear; William R. Newman, Jr. and Jane Doe Newman, husband and wife, Mark Brown and Jane Doe Brown, husband and wife; Ralph McLaughlin and Jane Doe McLaughlin, husband and wife; and Jeff Rogers and Jane Doe Rogers, husband and wife,<br><br>Defendants. | No. CV-12-00319-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Defendants' Motion to Dismiss (Doc. 89). The Court now rules on the Motion.

## I.     BACKGROUND

On February 15, 2012, Plaintiffs filed a Complaint against Defendants (Doc. 1). On June 5, 2012, Plaintiffs filed an Amended Complaint against Defendants. (Doc. 6). In September 2012, Defendants filed a Motion to Dismiss the Complaint and a Motion for Partial Summary Judgment. In May 2013, the Court granted the Motion for Partial Summary Judgment and granted the Motion to Dismiss. (Doc. 81). In its Order, the Court found that certain state law claims asserted by Plaintiffs were barred because

Plaintiffs failed to properly comply with Arizona's Notice of Claim statute, Arizona Revised Statutes section 12-821.01.  (*Id.*).  The Court granted summary judgment as to those state law claims.  The Court also granted the Motion to Dismiss Plaintiffs' Amended Complaint.  The Court noted that, although Plaintiffs included various facts in their complaint and listed various constitutional violations, Plaintiffs failed to allege or explain how the facts alleged supported their legal theories.  (*Id.*).  The Court nonetheless granted Plaintiffs leave to amend, but warned that Plaintiffs needed to correct the deficiencies in any amended complaint.  (*Id.*).

Thereafter, Plaintiffs moved for partial reconsideration of the Order partially granting the summary judgment motion.  (Doc. 85).  Plaintiffs argued that, to the extent the Court granted judgment on the state law claims because they filed their complaint before serving their notice of claim, that judgment was in error.[1]  The Court denied the Motion for Reconsideration (Doc. 108).

On May 28, 2013, Plaintiffs filed a Second Amended Complaint.  (Doc. 84).  In their Second Amended Complaint (Doc. 84), Plaintiffs allege as follows:

In 2001, Plaintiff David Bryant ("Mr. Bryant") joined the Goodyear Police Department.  (Doc. 84 at ¶ 19).  In 2008, Mr. Bryant was promoted to sergeant.  (*Id.* at ¶ 21).  Mr. Bryant routinely received performance reviews describing him as an exemplary employee and police officer and he was awarded numerous commendations.  (*Id.* at ¶ 22).  In 2009, Mr. Bryant applied for and received a position of Sergeant of the Street Crimes Unit of the Goodyear Police Department (the "SCU"), where he had direct supervision over the four officers in the SCU.  (*Id.* at ¶ 23).  Because the unit was a new entity, at the time of the events referenced in the complaint, there was no Goodyear Police Department policy in place for the SCU and Sergeant Bryant was in the process of drafting such a policy.  (*Id.* at ¶ 25).  The nature of SCU work meant that its officers were often out of

---

[1]   Although this was one basis for the dismissal of certain state law claims against certain Defendants, the Court also granted judgment on certain state law claims against certain Defendants because those claims accrued more than 180 days before Plaintiffs served any of the Defendants with a notice of claim.  (Doc. 81).

1   the station in undercover operations that caused them to be "off the grid."  (*Id.* at ¶ 28).

2   Mr. Bryant was required to perform duties outside the unit's normal hours of service and,

3   in addition to his responsibility for the SCU, Mr. Bryant supervised three non-SCU

4   officers, oversaw the Goodyear Police Department's off-duty program, and occasionally

5   covered Parol Sergeant duties.  (*Id.* at ¶¶ 29-30).

6        In 2010, Mr. Bryant was preparing the SCU for an operation that required the SCU

7   to raid a facility and serve search warrants the following morning at 5:30 a.m.  (*Id.* at ¶

8   33).  Because of the danger involved in the next day's operation and the early timeframe,

9   Mr. Bryant, with the permission of Commander Cusson, allowed the SCU to go home

10  early in the afternoon to be with their families and rest for the upcoming operation.  (*Id.*

11  at ¶ 34).  The enforcement operation the following day took approximately 15 hours

12  making up for the early release the day before.  (*Id.* at ¶ 35).

13       A news story about a City of Phoenix police officer arrested for putting in time

14  while performing off-duty jobs scared SCU officers and, as a result, those officers

15  reported to Bryant's supervisor that they put down ten hours on the day they were

16  released early, but only worked five hours.  (*Id.* at 36).  Those officers claimed that Mr.

17  Bryant told them such action was "blessed" by his superiors.  (*Id.*).   Mr. Bryant denies

18  that statement.  (*Id.*).  Those reports triggered an internal affairs investigation.  (*Id.*).

19       The internal affairs investigation was led by Defendant Sergeant Rogers

20  ("Rogers").  (*Id.* at ¶ 37).  Rogers had little experience in internal affairs investigations

21  and had not attended internal affairs trainings at the time he started the investigation of

22  Mr. Bryant.  (*Id.*).  Rogers' investigation culminated in a criminal referral against Mr.

23  Bryant.  (*Id.* at 38).  Rogers violated Goodyear Police Department policy because he did

24  not end the internal affairs investigation once the criminal investigation was started and

25  failed to bring exculpatory information the attention of criminal investigators.  (*Id.* at 38).

26  Rogers also leaked information regarding the internal investigation to Mr. Bryant's union

27  representative in an attempt to force Mr. Bryant off the force.  (*Id.* at 38).

28       Defendant  Ralph  McLaughlin  ("McLaughlin)  directed  Defendant  William

- 3 -

Newman ("Newman") to perform the criminal investigation.  (*Id.* at ¶ 39).  Defendant Newman later provided false testimony to a Grand Jury regarding Mr. Bryant.  (*Id.* at ¶ 40).  McLaughlin leaked the indictment issued by the Grand Jury.[2]  (*Id.* at ¶ 41).  Defendant Mark Brown ("Brown") approved of this leak.  (*Id.*).  Feeling singled out and unwelcome at Goodyear Police Department, Mr. Bryant accepted a job as head of security at a large warehouse firm.  (*Id.* at ¶¶ 42-43).

McLaughlin then held a press conference regarding the indictment against Bryant, where Mr. Bryant's picture was repeatedly shown in connection with a 17-count felony indictment.  (*Id.* at ¶¶ 45, 47).  Mr. Bryant was scheduled to begin his new job the day after the press conference aired, but, before he started, his new employers informed him he could no longer work for them.  (*Id.* at ¶¶ 46-47).  After its investigation, the Maricopa County Attorney's Office voluntarily moved to dismiss all charges against Bryant.  (*Id.* at ¶ 51).

In their Second Amended Complaint, Plaintiffs assert twenty-five claims of violations of federal and state law against Defendants.

Defendants now move to dismiss Counts 1-4, 6-7, and 9-25 of the Amended Complaint.  Defendants have not moved to dismiss counts 5 or 8 as alleged against Defendant Newman and Defendant McLaughlin, respectively.

## II.     LEGAL STANDARD

The Court may dismiss a complaint for failure to state a claim under 12(b)(6) for two reasons: 1) lack of a cognizable legal theory and 2) insufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must

---

[2]     Throughout the Complaint, Plaintiffs do not allege to whom Defendant McLaughlin allegedly leaked the Grand Jury indictment.  Based on subsequent allegations, the Court will assume, solely for the purposes of this Order, the allegation is that Defendant McLaughlin leaked the Grand Jury indictment to one or more members of the media.  However, the Court should not make (or have to make) such unwarranted, unsupported inferences.

1    meet the requirements of Rule 8.  Rule 8(a)(2) requires a "short and plain statement of the

2    claim showing that the pleader is entitled to relief," so that the defendant has "fair notice

3    of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly,*

4    550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41 (1957)).

5         A  complaint  must  contain  sufficient  factual  matter,  which,  if  accepted  as  true,

6    states a claim to relief that is "plausible on its face."  *Id.*  Facial plausibility exists if the

7    pleader pleads factual content that allows the court to draw the reasonable inference that

8    the  defendant  is  liable  for  the  misconduct  alleged.   *Id.*   Plausibility  does  not  equal

9    "probability," but plausibility requires more than a sheer possibility that a defendant has

10   acted unlawfully.  *Id.*

11        In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the

12   facts alleged in a complaint in the light most favorable to the drafter of the complaint, and

13   the  Court  must  accept  all  well-pleaded  factual  allegations  as  true.   *Shwarz v. United*

14   *States,* 234 F.3d 428, 435 (9th Cir. 2000).

15   **III.    ANALYSIS**

16       **A.    COUNTS 17-25**

17        Defendants  seek  to  dismiss  Counts  17-25  because  Plaintiffs  failed  to  properly

18   comply  with  Arizona's  Notice  of  Claim  Statute.   Count  17  is  a  state  law  malicious

19   prosecution  claim  against  Defendant  Rogers;  Count  18  is  a  state  law  malicious

20   prosecution claim against Defendant City of Goodyear; Count 19 is a state law abuse of

21   process claim against Defendant Rogers; Count 20 is a state law abuse of process claim

22   against Defendant City of Goodyear; Count 21 is an intentional infliction of emotional

23   distress  claim  against  Defendant  Rogers;  Count  22  is  an  intentional  infliction  of

24   emotional distress claim against Defendant City of Goodyear; Count 23 is a gross

25   negligence claim against Defendant Rogers, Count 24 is a gross negligence claim against

26   the City of Goodyear, and Count 25 is a claim for aiding and abetting tortious activity

27   against Defendant Rogers.  (Doc. 84).

28        In  response  to  Defendants'  argument  that  Counts  17-25  should  be  dismissed,

1    Plaintiffs argue that, for the reasons articulated in their Motion for Reconsideration of the
2    Court's prior Order, they did comply with the Notice of Claim statute.  Plaintiffs filed
3    their Response to the Motion to Dismiss before the Court ruled on their Motion for
4    Reconsideration.  However, pursuant to the Court's analysis in its Order on Defendants'
5    Motion for Partial Summary Judgment and Motion to Dismiss the Amended Complaint
6    (Doc. 81) and the Court's Order on Plaintiffs' Motion for Reconsideration (Doc. 108),
7    Plaintiffs have failed to comply with Arizona's Notice of Claim statute.

8         Plaintiffs argue alternatively that, even if they failed to comply with Arizona's
9    Notice of Claim statute, Defendants should be estopped from arguing that they failed to
10   comply because Defendants did not bring this motion until "June of 2013, after almost a
11   full year of discovery."  (Doc. 100 at 3).  In Response, Defendants argue that waiver is
12   inapplicable here because, at all times during this litigation, they have acted consistent
13   with the intention to assert a Notice of Claim statute defense and asserted their defense
14   under the NOC statute as soon as it was procedurally appropriate.

15        "The [Arizona] notice of claim statute is subject to waiver, estoppel and equitable
16   tolling."  *Jones v. Cochise County*, 187 P.3d 97, 104 (Ariz. Ct. App. 2008) (internal
17   quotations and citation omitted).  "Waiver by conduct must be established by evidence of
18   acts inconsistent with an intent to assert the right.  A party may assert an affirmative
19   defense in its pleadings and still waive that defense by conduct." *Id.* (internal quotations
20   and citations omitted).  "Waiver may be found when a governmental entity has taken
21   substantial action to litigate the merits of the claim that would not have been necessary
22   had the entity promptly raised the defense." *Id.* at 105.

23        Defendants were served with the Amended Complaint in June 2012.  Defendants
24   listed failure to comply with the Notice of Claim statute as an affirmative defense in their
25   Answer to the Amended Complaint, which they filed on July 30, 2012.  In September
26   2012, Defendants filed a Motion for Partial Summary Judgment on Plaintiffs' state law
27   claims, wherein Defendants sought summary judgment based on Plaintiffs' failure to
28   comply with the Notice of Claim statute.  The Court had this Motion under advisement

until May 6, 2013.  On May 28, 2013, Plaintiffs filed their Amended Complaint and, on June 19, 2013, Defendants filed the instant Motion to Dismiss seeking to dismiss the state law claims based on Plaintiffs' failure to comply with Arizona's Notice of Claim statute.

Plaintiffs argue that, before Defendants filed their Partial Motion for Summary Judgment, Defendants sent written discovery requests to Plaintiffs and made their initial disclosures.  Plaintiffs further argue that, after Defendants filed their Partial Motion for Summary Judgment, Defendants continued to engage in discovery.  Plaintiffs argue that these actions are inconsistent with intent to assert the Notice of Claims statute as an affirmative defense.

With regard to Plaintiffs' argument that Defendants waived their defense because they continued to engage in discovery after they filed their Partial Motion for Summary Judgment, Plaintiffs' reasoning in wholly without merit.  Discovery in this case was not stayed by an order of the Court pending the Court's ruling on Defendants' Partial Motion for Summary Judgment.  If Defendants failed to engage in discovery in anticipation of this Court's possible rulings on their Motion for Summary Judgment, they would have run afoul of this Court's Orders.  This Court will not find waiver on the basis that Defendants continued to engage in discovery pending this Court's decision on pending motions.

Moreover, failure to comply with Arizona's Notice of Claim statute is a fact-intensive issue, which was not apparent on the face of Plaintiffs' Amended Complaint.  On July 30, 2012, Defendants raised that issue as an affirmative defense in their Answer and moved for summary judgment pursuant to that affirmative defense on September 14, 2012.  Under these circumstances, the Court does not find Defendants' conduct to be inconsistent with an intent to assert the affirmative defense of failure to comply with Arizona's Notice of Claim statute.

Accordingly, Defendants' Motion to Dismiss Counts 17-25 is granted.

**B.     COUNT ONE**

Defendants next seek to dismiss Count One of Plaintiffs' Second Amended

Complaint.   Count One of Plaintiffs' Second Amended Complaint is alleged against Defendant Rogers and is entitled "Civil Rights Violation 42 U.S.C. §1983."   The two substantive allegations under this Count are:

> Rogers, in his role as police sergeant for the City of Goodyear, under the color of state law, wrongfully instigated a criminal investigation into the working hours of Plaintiff David Bryant without probable cause.
> . . .
> Rogers' actions as described above led to Bryant's illegal arrest in violation of Bryant's Fourth and Fourteenth Amendment protections against unreasonable seizure of a person.

(Doc. 84 at ¶¶ 122-123).

Defendants argue that Count One fails to state a claim upon which relief can be granted because it is not clear what legal theory Plaintiffs are attempting to assert. Defendants argue that, if Plaintiffs intended to allege a claim related to the initiation of an investigation, such claim must fail because there is no legally cognizable § 1983 claim for the initiation of a criminal investigation without probable cause.   Defendants further argue that, to the extent Count One was intended to be an illegal seizure claim, that claim must fail because Plaintiffs have alleged no facts that Mr. Bryant was ever seized.

In Response, Plaintiffs argue that the Second Amended Complaint "contains allegations supporting a claim for unreasonable seizure in violation of Bryant's Fourth and Fourteenth Amendment rights."   Plaintiffs argue that, because the Second Amended Complaint alleges that an indictment was issued, reasonable inferences to be made are that a summons was issued and that Bryant was booked and released.   Plaintiffs further argue that "Bryant was prohibited from traveling out of state without prior order of the court," which can be a seizure within the meaning of the Fourth Amendment.

Although Plaintiffs argue that it can be inferred from the fact that an Indictment issued that Mr. Bryant was "booked and released," it is not clear to the Court that such an inference is inevitable.   Moreover, requiring Defendants and the Court to make inferences from the facts alleged in the complaint in order to state a claim is insufficient to survive a

1    motion to dismiss.  *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011)

2    (stating that conclusory allegations and unwarranted inferences are insufficient to defeat a

3    motion to dismiss.).  Moreover, although Plaintiffs argue that "Bryant was prohibited

4    from traveling out of state without prior order of the court," Plaintiffs did not include any

5    such allegations in their Second Amended Complaint.  Further, although Plaintiffs allege

6    that Rogers initiated a criminal investigation against Mr. Bryant, Plaintiffs include no

7    allegations or argument that would lead the Court to conclude that Rogers is responsible

8    for an illegal seizure of Mr. Bryant.

9    As a result, Plaintiffs have failed to plead sufficient facts to support a legally

10   cognizable claim under the Fourth Amendment and, thus, Defendants' Motion to Dismiss

11   Count One is granted.

12   **C.     COUNTS TWO, FOUR, AND NINE**

13   Defendants next argue that Plaintiffs fail to state a claim of a procedural due

14   process violation in Counts Two, Four, and Nine of their Complaint.  Count Two of

15   Plaintiffs' Second Amended Complaint is alleged against Defendant Rogers and is

16   entitled "Procedural Due Process-Internal Affairs Investigation."  In Count Two,

17   Plaintiffs allege that Rogers wrongfully continued an internal affairs investigation after

18   he started a criminal investigation into Mr. Bryant.  Plaintiffs allege that Mr. Bryant was

19   entitled to have the internal affairs investigation cease once the criminal investigation had

20   begun.

21   Count Four is alleged against Defendant Rogers and is entitled "Leak of Internal

22   Affairs Investigation."  In Count Four, Plaintiffs allege that Rogers violated Mr. Bryant's

23   due process rights by leaking Rogers' conclusions from the internal affairs investigation

24   in an effort to force Mr. Bryant to resign from the police force.

25   Count Nine is alleged against Defendant McLaughlin and is entitled "Procedural

26   Due Process."  In Count Nine, Plaintiffs allege that Defendant McLaughlin ratified the

27   actions of Rogers in continuing the internal affairs investigation and taking the statement

28   of Bryant after the criminal investigation had started in violation of his procedural due

process rights and rights under the Fifth Amendment.

Defendants argue that these claims must be dismissed because Plaintiffs have failed to allege any property or liberty interest that was deprived by Defendants' actions. In response, Plaintiffs argue that Mr. Bryant was deprived of a right contained in Arizona Revised Statutes section 38-1101(2), which provides:

> Before the commencement of any interview described in this section, the employer shall provide the law enforcement officer or probation officer with a written notice informing the officer of the alleged facts that are the basis of the investigation, the specific nature of the investigation, the officer's status in the investigation, all known allegations of misconduct that are the reason for the interview and the officer's right to have a representative present at the interview. The notice shall include copies of all complaints that contain the alleged facts that are reasonably available, except for copies of complaints that involve matters pursuant to federal laws under the jurisdiction of the equal employment opportunity commission.

Ariz. Rev. Stat.   Ann. § 38-1101(2).   Plaintiffs allege that they have alleged facts supporting a violation of section 38-1101 because they alleged that Rogers never informed Bryant that he expanded the scope of the investigation or that he had referred the matter for a simultaneous, overlapping criminal investigation.   Plaintiffs argue that they alleged that Bryant only received notice that the interview was related to timesheets on the a day prior to an enforcement operation and that the questioning violated Bryant's due process rights because Rogers questioned Bryant about his logging into the CAD system and his timesheets.

Based on the facts alleged by Plaintiffs, it is not clear whether, under Arizona Revised Statutes section 38-1101, Defendants were even required to inform Mr. Bryant that there was a simultaneous criminal investigation or that the notice was insufficient such that it did not encompass questioning about logging into the CAD system and his timesheets.   Moreover, Plaintiffs have failed to allege facts demonstrating that section 38-1101(2) gives rise to a constitutionally protected liberty or property interest.   Likewise,

1    Plaintiffs have failed to allege facts leading to the conclusion that the City of Goodyear's
2    policy to shut down an internal affairs investigation once a criminal investigation was
3    started gave them a constitutionally protected liberty or property interest.  Accordingly,
4    Defendants' Motion to Dismiss Count Two is granted.

5         With regard to Count Four, Plaintiffs argue that "Bryant had a right pursuant to
6    City of Goodyear policy not to have the internal affairs investigation leaked.  Roger's
7    leaked the information in an effort to force Bryant to resign . . . . Certainly, adverse
8    employment actions were taken against Bryant and are alleged in the second amended
9    complaint."  (Doc. 100 at 6).  It is difficult to follow Plaintiffs' logic as to how this states
10   a due process violation.

11        "A section 1983 claim based upon procedural due process . . .  has three elements:
12   (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the
13   interest by the government; (3) lack of process."  *Portman v. County of Santa Clara*, 995
14   F.2d 898, 904 (9th Cir. 1993).  It is not clear what liberty or property interest Plaintiffs
15   are claiming was violated in Count Four.  Accordingly, Defendants' Motion to Dismiss
16   Count Four is granted.

17        With regard to Count Nine, Plaintiffs argue that McLaughlin violated Mr. Bryant's
18   due process rights by permitting:

19              Rogers to violate policy and ask questions of Bryant
20              regarding the criminal matters after the criminal investigation
                was underway.  McLaughlin was in charge of Rogers, knew
21              the conduct was improper, and permitted it anyway. Mr.
                Bryant was forced to testify regarding matters for which he
22              was then subject to a criminal investigation. He was not told
23              of the criminal investigation. This violated his rights pursuant
                to A.R.S. § 38-1101(2) as well as his procedural rights
24              created by the custom and practice of the department.

25   Again, it is not clear what liberty or property interest Plaintiffs are claiming was violated
26   in Count Nine.  Accordingly, Defendants' Motion to Dismiss Count Nine is granted.

27        **D.    COUNTS SEVEN AND TEN**

28        Defendants argue that Plaintiffs fail to state a substantive due process claim in

- 11 -

Counts Seven and Ten of their Complaint.  Count Seven is alleged against Defendant Newman and is entitled "Substantive Due Process/Lying Before the Grand Jury/Destruction of Evidence."   Count Ten is alleged against Defendant McLaughlin and is entitled "Substantive Due Process."

In Count Seven, Plaintiffs allege that Defendant Newman violated Bryant's substantive due process rights by: depriving him of his right to have the criminal charges reviewed by a Grand Jury, by lying to the Grand Jury, destroying relevant exculpatory evidence, and failing to disclose such exculpatory evidence until after the filing of the criminal charges.

In Count Ten, Plaintiffs allege that Defendant McLaughlin approved and permitted Defendant Newman to present false testimony to the Grand Jury in violation of Bryant's substantive due process rights.

Defendants argue that Counts Seven and Ten should be dismissed because Plaintiffs have failed to allege any facts to support an inference that Defendant Newman and Defendant McLaughlin's actions deprived Plaintiffs of life, liberty or property, much less in a way that would shock the conscience.  In Response, Plaintiffs argue that they have stated a due process claim of deliberate fabrication of evidence.

To sustain a deliberate fabrication of evidence claim, a plaintiff must:

> *at a minimum,* point to evidence that supports at least one of the following two propositions: (1) Defendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information.

*Costanich v. Dep't of Social and Health Svcs.*, 627 F.3d 1101, 1111 (9th Cir. 2010) (quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc)).

Plaintiffs allege that Defendant Newman lied to the Grand Jury, destroyed exculpatory evidence, and failed to disclose exculpatory evidence.  Plaintiffs further allege that Defendant McLaughlin knew about these actions and approved of them.

- 12 -

Although Defendants assert that these allegations are conclusory, Plaintiffs have alleged enough facts to state a claim for deliberate fabrication of evidence in Counts Seven and Ten.  Accordingly, Defendants' Motion to Dismiss Counts Seven and Ten is denied.

### E.   COUNT THREE

Defendants move to dismiss Count Three and, in response, Plaintiffs concede that Count Three should be dismissed.  (Doc. 100 at 8).   Accordingly, Defendants' Motion to Dismiss Count Three is granted.

### F.   COUNT SIX

Defendants next argue that Plaintiffs fail to state a claim of selective prosecution in Count Six.  Count Six is alleged against Defendants Newman, McLaughlin, Brown, and the City of Goodyear and is entitled "Selective Prosecution-Equal Protection."   In Count 6, Plaintiffs allege that Defendants Newman, McLaughlin, and Brown

> authorized or ratified the criminal investigation and criminal referral of Sergeant Bryant on the premise that the lack of presence on the CAD system for the number of hours on the claimed time sheets amounted to stealing from the City of Goodyear.  No one else was investigated or prosecuted under this theory.

(Doc. 83 at ¶¶ 141-142).   Defendants argue that Plaintiffs fail to state a claim for selective prosecution based on a class-of-one theory because Plaintiffs have failed to allege facts that Mr. Bryant was intentionally treated differently than others similarly situated and because the decision-making alleged is discretionary.

In response, Plaintiffs argue that they alleged that Mr. Bryant was intentionally treated differently than others similarly situated because they alleged that the entire Street Crimes Unit often worked "off-the-grid," and all time sheets versus hours actually worked for the entire Street Crimes Unit would have shown the same discrepancy, but only Bryant was prosecuted for the discrepancy.  Plaintiffs further argue that they alleged that Mr. Bryant was intentionally treated differently than others similarly situated because they alleged that officers outside the SCU would have similarly discrepancies between

their timesheets and the CAD system and they were not investigated and prosecuted.  For the purposes of surviving a motion to dismiss, Plaintiffs have adequately alleged that they were intentionally treated differently than others similarly situated.

Moreover, although Defendants correctly argue that the existence of discretion standing alone cannot be an equal protection violation, Plaintiffs have alleged that discretion was being exercised in a way that resulted in Mr. Bryant being treated less favorably than others.  *See Towery v. Brewer*, 672 F.3d 65, 660-661 (9th Cir. 2012) ("Absent any pattern of generally exercising the discretion in a particular manner while treating one individual differently *and* detrimentally, there is no basis for Equal Protection scrutiny under the class-of-one theory. In other words, the existence of discretion, standing alone, cannot be an Equal Protection violation. At the very least, there must be some respect in which the discretion is being exercised so that the complaining individual is being treated less favorably than others generally are."). Accordingly, Defendants' Motion to Dismiss Count Six is denied.

### G.    COUNT ELEVEN

Defendants next argue that Plaintiffs fail to state a claim upon which relief can be granted based on a "right of privacy" and, thus, Count Eleven should be dismissed. Count Eleven is alleged against Defendant McLaughlin and is entitled "Right to Privacy."  In Count Eleven, Plaintiffs allege that McLaughlin, by holding an illegal press conference violated Arizona state law and defamed Bryant for the purpose of trying to improve his own reputation and that of the Goodyear Police Department, and, as a result, invaded the privacy rights of the Bryants.

Plaintiffs argue that

> Arizona law prohibits the publishing of the indictment prior to the time the accused person is in custody of or is served with a summons. *See* A.R.S. § 38-2813.  In the instance case, Defendant McLaughlin held a press conference prior to Bryant's possession of the indictment.  In doing so, McLaughlin obliterated a privacy right under A.R.S. §38-2813.

(Doc. 100 at 10-11).  It is not clear to the Court the basis of Plaintiffs' legal claim, either from the allegations in their Second Amended Complaint or in their argument in response to Defendants' Motion to Dismiss.  Plaintiffs cite to *Wisconsin v. Constantineau*, 400 U.S. 433, 510 (1970) in support of their argument that they have stated a right of privacy claim, but *Constantineau* is a case regarding procedural due process and it is unclear how Plaintiffs' "right of privacy" claim states a procedural due process violation.  Likewise, although Plaintiffs appear to argue that Arizona Revised Statutes section 38-2813 guarantees them a privacy right, the Court has been unable to locate that statute.  Moreover, even if such a statute existed, it is unclear how it would support Plaintiffs' "right of privacy" claim.  Accordingly, Defendants' Motion to Dismiss Count Eleven is granted.

**H.     COUNTS TWELVE, THIRTEEN, AND FOURTEEN**

Defendants next argue that Counts Twelve, Thirteen, and Fourteen should be dismissed because Plaintiffs have failed to state a claim upon which relief can be granted against Defendant Brown in those Counts.

Count Twelve is alleged against Defendant Brown and is entitled "Civil Rights Violation 42 U.S.C. § 1983 – Lack of Probable Cause."  In Count Twelve, Plaintiffs allege that Defendant Brown was the final policymaker for the City of Goodyear Police Department.  Plaintiffs further allege that Brown was aware that there was no policy requiring Bryant to be logged into the CAD system during working hours, Defendant Brown met with Newman regarding his investigation, and Defendant Brown acted with extreme negligence or reckless indifference to the rights of Bryant by permitting Newman and/or McLaughlin to refer the matter to the County Attorneys' office without probable cause to believe a crime was committed.

Count Thirteen is alleged against Defendant Brown and is entitled "Lack of Probable Cause-Improper Policy."  In Count Thirteen, Plaintiffs allege that Brown was the final policy maker for the City of Goodyear Police Department.  Plaintiffs allege that Brown had a policy of not turning over sensitive investigations to competent outside

1  investigators and this policy dictated that unqualified individuals would investigate

2  Bryant.  Plaintiffs allege that this policy led to the "Constitutional violations describe[d]

3  in this complaint."  (Doc. 84 at 24).

4       Count Fourteen is alleged against Defendant Brown and entitled "42 U.S.C. §

5  1983 Hours Policy – Brown."  In Count Fourteen, Plaintiffs allege that Brown was the

6  final policy maker for the City of Goodyear Police Department.  Plaintiffs further allege

7  that it was Brown's policy not to pay officers for work performed outside the officers'

8  scheduled hours.  Plaintiffs allege that this policy led to the violation of Bryant's Fourth

9  Amendment rights by contributing to his arrest without probable cause.

10       Defendants argue that, while it is not clear whether Plaintiffs' claims are asserted

11  against Defendant Brown in his official capacity as a policy maker or in his individual

12  capacity under a theory of supervisory liability, Plaintiffs fail to state a claim upon which

13  relief can be granted under either theory.

14       Defendants first argue that, to the extent Plaintiffs intend to assert claims against

15  Defendant Brown in his official capacity, they have failed to do so because they have not

16  alleged a policy or practice that was the moving force behind the constitutional violation.

17       In response, Plaintiffs argue that:

18
19
20
21
22
23
24
25
26
27
> Bryant's Constitution [sic] rights included the right to not be falsely accused of a crime based on fabricated evidence created by an incompetent investigation. Bryant's rights forbade a state actor lying in a grand jury hearing to secure an indictment. Bryant's rights prevent his seizure without probable cause. Brown's policy of not turning over sensitive internal investigations to objective, competent outside investigators directly resulted in these violations of Bryant's rights. SAC at ¶¶ 114,118. As is typical of internal investigations, outside investigators possess an objective view of the situation and proper training techniques. Brown's policy already led to an incompetent investigation in the *Pendleton* matter. SAC at ¶ 114. Brown's policy constituted the moving force behind these constitutional violations.

(Doc. 100 at 11).

28      "[T]o impose liability based on a policy of deliberate inaction, the plaintiff must

1    establish: (1) that he possessed a constitutional right of which he was deprived; (2) that

2    the municipality had a policy; (3) that this policy amounts to deliberate indifference to the

3    plaintiff's constitutional right; and (4) that the policy [was] the 'moving force behind the

4    constitutional violation.'"  *Berry v. Baca*, 379 F.3d 764, 767 (9th Cir. 2004) (internal

5    citations omitted).

6         Plaintiffs allege two policies: (1) Brown's policy not to pay officers for work

7    performed outside the officers' scheduled hours; and (2) Brown's policy of not turning

8    over sensitive investigations to competent outside investigators.   Although Plaintiffs

9    insist that whether these policies led to constitutional violations is a question of fact,

10   Plaintiffs must *allege* some causal connection between Brown's alleged policies and

11   constitutional injuries sustained by Mr. Bryant.  Taking the facts alleged by Plaintiffs as

12   true that Brown had policies of not paying officers for work performed outside the

13   officers' scheduled hours and of not turning over investigations to outside investigators, it

14   is not clear how these policies or practices are closely related to any constitutional

15   injuries allegedly sustained by Mr. Bryant.  *See City of Canton, Ohio v. Harris*, 489 U.S.

16   378, 379 (1989) ("the identified deficiency in the training program must be closely

17   related to the ultimate injury.").  As a result, Plaintiffs have failed to state a claim upon

18   which relief can be granted against Defendant Brown based on a policy or practice as

19   alleged in Counts Thirteen and Fourteen, and Defendants' Motion to Dismiss Counts

20   Thirteen and Fourteen is granted.

21        Defendants next argue that, to the extent Plaintiffs intend to assert claims against

22   Defendant Brown in his individual capacity, Plaintiffs have failed to state claim upon

23   which relief can be granted because Plaintiffs have failed to allege that Defendant Brown

24   was personally involved in any violations of Mr. Bryant's constitutional rights and have

25   failed to allege any causation connection between Defendant Brown's conduct as a

26   supervisor and any constitutional violation sustained by Mr. Bryant.

27        Plaintiffs argue that they have adequately pled that Brown knew about the acts of

28   his subordinates that resulted in violations of Mr. Bryant's constitutional rights and

Brown failed to prevent them.  Plaintiffs argue that it can be inferred from their allegations that "Brown knew that his officers conjured evidence of a non-existent crime and yet allowed them to continue their investigation based on false evidence."  (Doc. 100 at 13).

"A supervisor is liable under § 1983 for a subordinate's constitutional violations if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  *Maxwell v. County of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013) (internal quotation and citation omitted).  As discussed above, Plaintiffs have adequately alleged that Mr. Bryant was selectively prosecuted by Defendants Newman, McLaughlin, Brown, and the City of Goodyear.  As a result, Plaintiffs have stated a claim for supervisory liability in Count Twelve against Defendant Brown.

Based on the foregoing, Defendants' Motion to Dismiss Count Twelve is denied.

I.     **COUNTS FIFTEEN AND SIXTEEN**

Defendants next move to dismiss Counts Fifteen and Sixteen for failure to state a claim upon which relief can be granted.

Count Fifteen is asserted against the City of Goodyear and is entitled "Civil Rights Violation 42 U.S.C. § 1983."  In Count Fifteen, Plaintiffs allege that the City of Goodyear had a policy that officers would turn their timesheets in prior to the end of the week, requiring officers to estimate the hours they would work the last days of the pay period.  Plaintiffs further allege that the City had a policy of discouraging overtime and requiring 40 hours of work a week regardless of when the 40 hours was completed.  Plaintiffs allege that it was the "Chief's policy" not to reimburse for hours worked outside the times for work shown on the department schedule.  Plaintiffs allege that these policies violated federal and state labor laws.  Plaintiffs allege that, based on these policies, "the City made a referral to the County Attorney's Office for a criminal indictment by willfully ignoring hours Bryant worked and artificially shorting his hours to exclude time he spend on City-related activities."

1    Defendants argue that Plaintiffs have failed to state a claim against the City of
2 Goodyear based on an unlawful policy or practice theory.  Defendants argue that
3 Plaintiffs have provided no allegations as to how Goodyear's alleged policies of
4 discouraging overtime, requiring officers to turn in their timesheets before the end of the
5 pay period, and not paying officers for de minimis time worked caused the alleged
6 constitutional violations.

7    In response, Plaintiffs argue that the Second Amended Complaint sufficiently
8 alleges that the City's policy of "routinely violating laws" by not paying for time worked
9 directly resulted in Defendant Newman providing false testimony to the grand jury.
10 Plaintiffs allege that, because of the City's policy of not paying for work performed
11 outside an officers' designated work schedule, Newman testified that Officer Bryant did
12 not work on a particular day when the evidence showed Bryant working that day outside
13 of his designated scheduled hours.

14    It is not enough for Plaintiffs to simply allege a policy and conclude that the policy
15 resulted in a constitutional deprivation.  Rather, Plaintiffs must allege facts supporting a
16 causal connection between an alleged policy and a constitutional deprivation.  *See*
17 *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  Here, the facts alleged by Plaintiffs
18 do not support their theory that Newman fabricated evidence and lied to the Grand Jury
19 *because* the City had an alleged policy of not paying for work performed outside the
20 officers' designated work schedule.  Accordingly, Plaintiffs have failed to state a claim
21 upon which relief can be granted against the City of Goodyear based on an alleged
22 unlawful policy.  Therefore, Defendants' Motion to Dismiss Count Fifteen is granted.

23    Count Sixteen is asserted against the City of Goodyear and is entitled "Failure to
24 Train."  In Count Sixteen, Plaintiffs allege that the City of Goodyear has a history and
25 pattern of failing to adequately train its officers in investigation techniques leading to
26 Constitutional violations.  Plaintiffs further allege that the City of Goodyear's failure to
27 train its officers in investigation techniques and protocols lead to abuses and mistakes in
28 homicide and sex crime investigations.  Plaintiffs allege that the failure to properly train

Rogers in investigation techniques led to Rogers' negligent investigation and the Constitutional violations Rogers committed.

Defendants argue that Plaintiffs' claim against the City of Goodyear based on a failure to train theory fails because that claim is solely based on Plaintiffs' allegations that Goodyear Police Department failed to properly train its officers on how to properly conduct an internal affairs investigation.  Defendants argue that Plaintiffs have failed to allege any facts showing that Goodyear's alleged failure to properly train its officers led to a constitutional injury.

In response, Plaintiffs argue that they have alleged that the City of Goodyear failed to train its officers on how to conduct an investigation and that the failure of those officers to properly conduct an investigation resulted in Mr. Bryant sustaining constitutional injuries.  Plaintiffs argue that, if the City of Goodyear properly trained its officers, Mr. Bryant would not have sustained any constitutional injuries.

"[I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Harris*, 489 U.S. at 388-389.

"In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390-391 (internal citations omitted).  Negligent administration of a program or evidence that "an injury or accident could have been avoided if an officer had had better or more training sufficient to equip him to avoid the particular injury-causing conduct" do not suffice to impose failure to train liability on a City.  *Id.* at 391.  "Moreover, for liability to attach, the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.*

In this case, Plaintiffs allege that Mr. Bryant sustained constitutional injuries based on the conduct of Goodyear Police Department officers' conduct and that conduct would

not have occurred if those officers were properly trained by the City of Goodyear. These allegations are sufficient to state a claim against the City of Goodyear for failure to train. Accordingly, Defendants' Motion to Dismiss Count Sixteen is denied.

### IV.    CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 89) is **granted** as to Counts One, Two, Three, Four, Nine, Eleven, Thirteen, Fourteen, Fifteen, Seventeen, Eighteen, Nineteen, Twenty, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Four, and Twenty-Five and **denied** as to Counts Six, Seven, Ten, Twelve, and Sixteen.

The claims that remain in the Second Amended Complaint are: Count Five alleged against Defendant Newman; Count Six alleged against Defendants Newman, McLaughlin, Brown, and the City of Goodyear; Count Seven alleged against Defendant Newman; Count Eight alleged against Defendant McLaughlin; Count Ten alleged against Defendant McLaughlin; Count Twelve alleged against Defendant Brown; and Count Sixteen alleged against Defendant City of Goodyear.

Dated this 4th day of September, 2013.

James A. Teilborg
Senior United States District Judge