**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Bryant, et al., | No. CV-12-00319-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| The City of Goodyear, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. 116). The Court now rules on the motion.

## I.   Background

The following basic facts surrounding this case are undisputed. Plaintiff David Bryant ("Bryant") was a sergeant with the Goodyear Police Department's ("GPD") Street Crimes Unit ("SCU"). In November 2010, the GPD initiated an investigation of Bryant for alleged discrepancies between Bryant's reported hours worked and the time he actually worked. The investigation arose when Bryant's squad members allegedly reported that Bryant had instructed them to report ten hours worked on November 9, 2010 but they had only worked five hours that day. Bryant reported on his own timesheet for that day that he had worked ten hours, but according to Defendants, had only worked five hours. (Doc. 117-3 at 20-21, 23-24).

Sergeant Jeff Rogers was assigned to conduct an internal investigation into the

SCU squad members' claims.[1] Rogers obtained summary reports of timesheets for SCU squad members, copies of their original timesheets and timesheet corrections, and reports of starting and ending times as recorded by radio operators in Computer Aided Dispatch ("CAD"). Rogers found what he termed a "large discrepancy" between Bryant's timesheets and CAD logs, but no significant discrepancy in the records of the other four SCU squad members. (Doc. 117-4 at 3). Rogers recommended that Bryant be criminally investigated.

Based on Rogers' alleged discovery of a discrepancy, Lieutenant Newman criminally investigated Bryant. Newman received Rogers' memorandum of his findings as well as copies of timesheets, "hours proof listings, unit/officer status inquiry listings, hours history detail selection criteria, and unit log listings for David Bryant." (Defendants' Statement of Facts in Support of their Motion for Summary Judgment ("DSOF") ¶ 76). Newman reviewed these records for the time period from January 1, 2010 through July 24, 2010, as well as Bryant's posted work schedule for January 1, 2010 through November 13, 2010. Newman also reviewed computer access and logon records, facility access control records, off-duty work records, and phone records. Newman discovered facts that he believed showed Bryant had falsified his timesheets. For example, Bryant had submitted a timesheet claiming he worked ten hours on July 30, 2010, but he was on vacation in Texas that week.[2]

Based on his investigation, Newman submitted charges to the County Attorney involving Bryant's hours for the dates of August 27, 2010; September 7, 2010; September 23, 2010; and October 14, 2010. (Doc. 117-2 at 9). Newman subsequently sent a complete report to the County Attorney concerning these as well as other dates and

---

[1] Plaintiffs dispute a number of facts concerning the internal investigation on the grounds that they are neither "material nor relevant." (Doc. 122 at 10). Because relevance objections are superfluous at the summary judgment stage and materiality is not a legal objection, Plaintiffs' objections are overruled. *See Burch v. Regents of University of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).

[2] Plaintiffs dispute that Bryant was strictly on vacation because he worked while on vacation, as evidenced by the ten hours recorded. (Doc. 122 at 14).

times for which Newman believed Bryant had been compensated but had not worked. (*Id.* at 8). A grand jury eventually indicted Bryant on seventeen counts, including fraudulent schemes and practices, theft, and forgery. The County Attorney later dismissed the indictment.

## II.     Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a

motion for summary judgment. *Id.* at 247–48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

**III.  Qualified Immunity**

Defendants Newman, McLaughlin, and Brown argue they are entitled to qualified immunity as a matter of law because at least one reasonable police officer in their position could have believed their conduct was permissible. (Doc. 116 at 12).

**A.  Legal Standard**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This protection "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)). There is a two-step test for resolving a qualified immunity claim: the "constitutional inquiry" and the "qualified immunity inquiry." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The "constitutional inquiry" asks whether, when taken in the light most favorable to the non-moving party, the facts alleged show that the official's conduct violated a constitutional right. *Id.* If so, a court turns to the "qualified immunity inquiry" and asks if the right was clearly established at the relevant time. *Id.* at 201-02. This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201.

Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. A dispositive inquiry in the qualified immunity analysis "is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). "Courts should decide issues of

1 qualified immunity as early in the proceedings as possible, but when the answer depends on genuinely disputed issues of material fact, the court must submit the fact-related issues to the jury." *See Ortega v. O'Connor*, 146 F.3d 1149, 1154 (9th Cir. 1998).

### B. Analysis

Plaintiffs argue that the doctrine of qualified immunity is inapplicable to this case because there was no "open legal question" regarding the elements necessary to establish the crimes for which Bryant was indicted. (Doc. 124 at 15-16). Plaintiffs assert that qualified immunity applies only when officers are mistaken as to the law. (*Id.*) In support, they offer cases in which courts concluded that qualified immunity protected officers from mistakes of law. (*Id.*) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 476 (9th Cir. 2007); *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011)). But these cases are merely consistent with the law of qualified immunity, which protects officers against reasonable mistakes of law *and* against those of fact. *See Pearson*, 555 U.S. at 231. A qualified immunity analysis is proper in this case.

### 1. Presumption of Probable Cause

The Court's first inquiry under the qualified immunity analysis is whether Defendants violated Bryant's constitutional rights. Plaintiffs couch their claims in the language of "referring Bryant for a criminal indictment without probable cause," and it is unclear whether the operative theory is malicious prosecution or arrest without probable cause.[3] *See* (Doc. 84 at 20) (Count V). Under either theory, Plaintiffs must show that Defendants lacked probable cause to believe that Bryant had committed a crime. *See Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) (malicious prosecution); *Lacy v. Cnty. of Maricopa*, 631 F. Supp. 2d 1183, 1193 (D. Ariz. 2008) (arrest without probable cause). Thus, the operative issue is whether Defendants lacked probable cause to pursue an indictment.[4]

---

[3] In their response, Plaintiffs treat the Defendants' pursuit of an indictment as an arrest without probable cause. (Doc. 124 at 5).

[4] Plaintiffs allege that Defendants cannot rely on facts concerning the GPD's internal investigation of Bryant to show the existence of probable cause, but offer no

In this case, the grand jury returned an indictment of Bryant. (Doc. 122-5 at 52). Probable cause for an arrest "may be satisfied by an indictment returned by a grand jury." *Lacy*, 631 F. Supp. 2d at 1194 (quoting *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997)). The grand jury's indictment was prima facie evidence of probable cause that Bryant had committed an offense. *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). This presumption of probable cause can be rebutted if officers improperly exerted pressure on the prosecutor, knowingly provided misinformation, concealed exculpatory evidence, "or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Id.*

### 2. Count Eight

In count eight, Plaintiffs allege that Defendant McLaughlin "approved and ratified of [sic] the criminal referral of the Bryant investigation without probable cause to believe Bryant had committed a crime." (Doc. 84 at 21). But Plaintiffs do not allege that Defendant McLaughlin engaged in wrongful or bad faith conduct in providing information to the grand jury. Because the grand jury indicted Bryant, a presumption attaches that probable cause existed for the seeking of that indictment. *See Lacy*, 631 F. Supp. 2d at 1194. Accordingly, McLaughlin could not have pursued the indictment in the absence of probable cause, did not violate Bryant's constitutional rights, and is entitled to qualified immunity. Defendants are entitled as a matter of law to judgment on count eight.

### 3. Count Five

In count five, Plaintiffs allege that Defendant Newman violated Bryant's constitutional rights by "referring Bryant for a criminal indictment without probable cause, by misleading the prosecutor regarding the evidence, and ultimately lying to the Grand Jury regarding the evidence." (Doc. 84 at 20). Plaintiffs make two arguments concerning Newman's behavior. First, they assert that Newman was at best incompetent in his investigation and knew or should have known that the GPD lacked probable cause

---

legal basis for this assertion. (Doc. 124 at 7).

- 6 -

to believe that Bryant had committed a crime. (Doc. 124 at 4). Second, they allege Newman lied to the grand jury concerning the investigation of Bryant. Indeed, Newman testified extensively before the grand jury about his investigatory efforts and the circumstances of the case. (Doc. 122-5 at 39).

Grand jury witnesses, however, have "absolute immunity from any § 1983 claim based on the witness' testimony." *Rehberg v. Paulk*, 132 S. Ct. 1497, 1506 (2012). "[T]his rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Id.* Newman is thus entitled to absolute immunity with respect to his testimony to the grand jury.

Plaintiffs accuse Newman of lying only with respect to his grand jury testimony; their argument with respect to Newman's investigation is that Newman was incompetent or otherwise did not conduct a reasonable investigation. (Doc. 124 at 10). But the grand jury's subsequent indictment of Bryant establishes the existence of probable cause for seeking that indictment. *See Lacy*, 631 F. Supp. 2d at 1194. Plaintiffs cite *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) for the proposition that charging a person on the basis of deliberately fabricating evidence is a violation of constitutional rights. (Doc. 124 at 13). *Devereaux* did not involve a grand jury indictment and Plaintiffs do not allege that Newman deliberately fabricated evidence in his investigatory report, only that he lied to the grand jury in his testimony. Similarly, Plaintiffs' citation to *Gantt v. City of Los Angeles*, 717 F.3d 702 (9th Cir. 2013) is unhelpful. Although a deliberate fabrication of evidence claim may exist if an officer continues to investigate a person despite "the fact that they knew or should have known that he was innocent," *Gantt*, 717 F.3d at 707 (quoting *Devereaux*, 263 F.3d at 1076)), Plaintiffs offer no evidence that Newman knew Bryant was innocent. At best, their evidence could establish that Bryant was not guilty of the alleged crimes. The grand jury's indictment establishes that the GPD had probable cause to believe Bryant had committed the alleged crimes, and therefore it was not the

case that Newman should have known Bryant was innocent.

Because Newman is entitled to absolute immunity with respect to his grand jury testimony and to qualified immunity with respect to his investigatory work in pursuing the indictment, Defendants are entitled to judgment as a matter of law on count five.

### 4. Count Six

In count six, Plaintiffs allege that Defendants Newman, McLaughlin, and Brown pursued the indictment against Bryan "on the premise that the lack of presence on the CAD system for the number of hours claimed on time sheets amounted to stealing from the City of Goodyear. No one else was investigated or prosecuted under this theory." (Doc. 84 at 20). A claim for selective prosecution requires the plaintiff to demonstrate that "enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 920 (9th Cir. 2012). "In order to prove a discriminatory effect, 'the claimant must show that similarly situated individuals . . . were not prosecuted." *Id.* (quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996)).

According to Defendants, there was a discrepancy of approximately 178 hours between Bryant's timesheets and his CAD records. (Doc. 117 at 11). Plaintiffs contend this alleged discrepancy was the basis of Bryant's prosecution and that similarly situated officers, namely Rogers and Newman, had the same discrepancies yet were not prosecuted. (Doc. 124 at 13). But Rogers and Newman were not similarly situated. The evidence shows that GPD employees ranked above sergeant (i.e. lieutenant and above) were salaried employees who "do not follow the same practice of routinely checking on and off duty" as hourly employees and "their working time would not necessarily be accurately reflected in CAD logs." (Doc. 117-4 at 3) (Declaration of Rogers). Newman, a lieutenant, was a salaried employee who supervised the investigations division. (Doc. 117 at 3). Plaintiffs admit that lieutenants' hours "would not accurately be reflected on the CAD system." (Doc. 122 at 8). Thus, Newman was not similarly situated to Bryant because there was no expectation that Newman's hours were accurately recorded in CAD

records.

Rogers worked a desk job as an administrative sergeant in the professional standards unit with no set hours and was not required to check on and off duty. (Doc. 117 at 9-10; Doc. 117-4 at 146, 148). For these reasons, Rogers was not similarly situated to Bryant because there was no expectation that Rogers' hours were accurately recorded in CAD records. Bryant was similarly situated, however, to his fellow SCU members, none of whom had any significant discrepancy between their timesheets and their CAD logs. (Doc. 117-4 at 3).

Although Plaintiffs allege in their response that "Defendants had a pattern of *not* investigating and charging individuals for discrepancies," (Doc. 124 at 13), Plaintiffs offer no evidence to support this argument other than their assertions regarding Newman and Rogers. For that reason, because neither Newman nor Rogers was similarly situated to Bryant, Plaintiffs' selective prosecution claim fails. Defendants are entitled to judgment as a matter of law on count six.

### 5. Count Seven

In count seven, Plaintiffs allege that Newman violated Bryant's substantive due process rights by lying to the grand jury and "permitting the destruction of relevant exculpatory evidence and fail[ing] to disclose this until after the filing of the criminal charges in this matter." (Doc. 84 at 21). As previously stated, Newman is entitled to absolute immunity for his testimony to the grand jury. With respect to Newman's alleged permission of the destruction of relevant exculpatory evidence, Plaintiffs assert that Newman violated Bryant's due process rights when he failed to secure Bryant's computers, resulting in Bryant's laptop being wiped of its data and sold for surplus. (Doc. 122 at 23). Even if Newman was as incompetent as Plaintiffs allege, his inactions do not rise to a due process violation.

As the Supreme Court has said, "[t]he Due Process Clause of the Fourteenth Amendment . . . makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence." *Arizona v. Youngblood*, 488

U.S. 51, 57 (1988). But "failure to preserve *potentially* useful evidence does not constitute a denial of due process of law" unless a defendant can show "bad faith on the part of the police." *Id.* (emphasis added). Plaintiffs do not even allege that Newman acted in bad faith; they merely assert that he was incompetent. Accordingly, Plaintiffs cannot establish a due process violation for the destruction of potentially exculpatory evidence and therefore Newman is entitled to qualified immunity for his inaction in preserving the contents of Bryant's laptop. *See Saucier*, 533 U.S. at 201.

### 6. Count Ten

In count ten, Plaintiffs allege that Defendant McLaughlin violated Bryant's substantive due process rights by approving and permitting Newman to present false testimony to the grand jury. (Doc. 84 at 22). "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). Because Newman is entitled to absolute immunity for his testimony to the grand jury, McLaughlin cannot be liable as a supervisor for that testimony. Plaintiffs present no evidence that McLaughlin knew Newman was going to present false testimony. Defendants are entitled to judgment as a matter of law on count ten.

### 7. Count Twelve

In count twelve, Plaintiffs allege that Defendant Brown, as Chief of Police for the City of Goodyear, permitted Newman and McLaughlin to refer the case against Bryant to the County Attorney's office without having probable cause to believe Bryant had committed a crime. (Doc. 84 at 23). Because the grand jury indicted Bryant, a presumption attaches that probable cause existed for the seeking of that indictment. *See Lacy*, 631 F. Supp. 2d at 1194. Accordingly, Brown is entitled to qualified immunity. Defendants are entitled to judgment as a matter of law on count twelve.

### 8. Count Sixteen

In count sixteen, Plaintiffs allege that the City of Goodyear (the "City") is liable for failure to train its officers in proper investigative techniques. (Doc. 84 at 26). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." "That a particular officer may be unsatisfactorily trained" or that the training program has "occasionally been negligently administered" does not give rise to liability. *Id.* at 390-91. Rather, "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997). Moreover, "the identified deficiency in a city's training program must be closely related to the ultimate injury." *Canton*, 489 U.S. at 391.

Plaintiffs have not shown any evidence that the City failed to properly train its officers, much less that the City did so while disregarding a known or obvious consequence of such a failure. Even assuming that Newman was, as Plaintiffs claim, not competent to investigate Bryant, Plaintiffs have not shown that Newman's lack of competence was the result of a failure to train amounting to deliberate indifference with respect to the rights of officers investigated. Plaintiffs identify no deficiency in the City's training program, merely deficiencies in Newman's training.

Plaintiffs attempt to show failure to train by pointing to other instances where City officers were found to have been inadequately trained. (Doc. 124 at 17). In particular, Plaintiff argues that a third-party report reviewing the GPD found that GPD training priorities did not "reflect a rigorous process." (Doc. 122 at 19). But Plaintiff selectively quotes from that report, which stated that training priorities did not "reflect a rigorous process . . . to establish a balanced and effective training program that reflects the

Department's philosophies of service delivery and expectations." (Doc. 122-3 at 9). In fact, the report noted that all of the thirty-five employees randomly surveyed met or exceeded the minimum requirements for continuing training. (*Id.* at 18). Plaintiffs point to nothing in the report that shows that the City failed to train its officers in investigatory techniques with disregard for the attendant consequences.[5]

Because Plaintiffs offer no evidence supporting their failure to train claim, Defendants are entitled to judgment as a matter of law on count sixteen.

## IV. Conclusion

Defendants are entitled to either qualified immunity or absolute immunity for their actions upon which all of Plaintiffs' claims are based. For this reason, Defendants are entitled to summary judgment on all claims, and the Court therefore need not address the balance of the parties' arguments.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 116) is granted.

**IT IS ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendants on all claims and terminate this case.

Dated this 19th day of May, 2014.

James A. Teilborg
Senior United States District Judge

---

[5] Similarly, although Plaintiffs cite another reviewing report to assert that the GPD lacks proper training, (Doc. 122 at 20), nothing in that report even hints at a failure to train relevant to this case. This second report merely noted in its conclusion that anomalies in another investigation "could have and should have been prevented with proper leadership and training." (Doc. 122-4 at 36).